UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA RENEE MORGAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. ED CV 13-1067-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On June 18, 2013, plaintiff Brenda Morgan filed a complaint against the Commissioner of Social Security Administration ("Commissioner"), seeking a review of a denial of a Supplemental Security Income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue: whether the Administrative Law Judge ("ALJ") improperly discounted plaintiff's credibility.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in discounting plaintiff's credibility, and such an error is not harmless as the ALJ consequently did not proceed beyond step two. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-six years old on her October 31, 2007 alleged disability onset date, is a high school graduate. AR at 27, 129. Plaintiff has past relevant work experience as a sample board maker and a dental assistant. AR at 134.

On October 20, 2010 plaintiff applied for SSI due to depression, anxiety, high blood pressure, and high cholesterol. AR at 115, 129, 133. Plaintiff, subsequent to the application, allegedly developed herpetic whitlow.[1]  *See* AR at 258.

On June 8, 2012, plaintiff, represented by council, appeared and testified at a hearing before the ALJ. AR at 23-40. Aida Worthington, a vocational expert, also testified. AR at 40-43.

Applying the well known five-step sequential evaluation process, the ALJ found, at step one, that the plaintiff has not engaged in substantial gainful activity since her October 20, 2010 application date. AR at 12.

At step two, the ALJ found plaintiff does not have a severe impairment or

---

[1]  Herpetic whitlow is a type of herpes effecting the finger digits. The disease is highly contagious and can manifest itself as lesions appearing as small blisters, which eventually open up and become scabbed over. *See generally* Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 2080 (3rd ed. 2012)

combination of impairments that limits (or can be expected to limit) plaintiff's ability to work for twelve consecutive months. AR at 12-16. Accordingly, the ALJ did not proceed beyond step two and determined plaintiff was not disabled. AR at 16.

Plaintiff filed a timely application for review, which was denied by the Appeals Council. AR at 1-3, 6. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A. **The ALJ Improperly Discounted Plaintiff's Credibility**

Plaintiff contends that the reasons provided by the ALJ for discounting plaintiff's credibility are not clear and convincing. Pl. Mem. at 11-20. The court agrees.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 13. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) plaintiff made contradictory statements regarding her ability to wet her hands; (2) plaintiff made contradictory statements regarding her daily activity; (3) plaintiff applied for work subsequent to her alleged onset of disability; and (4) the medical evidence does not support the severity of the symptoms claimed by plaintiff with regard to her herpetic whitlow. AR 13-14.

### 1. Plaintiff's Inability to Wet Her Hands

The ALJ's first proffered reason for finding plaintiff less than credible was her ostensibly inconsistent statements regarding the ability to wet her hands. AR at 13-14. Specifically, plaintiff noted she could not wet her hands, but later admitted to being able to shower to help alleviate her pain. *Id*.

Plaintiff testified she could not do the dishes because she could not wet her hands, as wetting her hands causes her herpetic whitlow to flare. AR at 34. Plaintiff testified she could shower and this would help alleviate the pain temporarily, but in the long term water made the condition worse. *Id*. These two statements are not contradictory. Plaintiff noted the short term "softening" of her hands when they get wet gives relief temporarily, but eventually results in her overall condition worsening. *Id*. Accordingly, these two statements do not constitute a contradiction. As such the ALJ's citation to these statements as

contradictory does not constitute a clear and convincing reason for discounting plaintiff's credibility.

### 2. Daily Activities

The ALJ's second proffered reason for discounting plaintiff's credibility is her inconsistent statements regarding her daily activity. AR at 14. Specifically, the ALJ notes plaintiff testified her daily activities were limited to taking medication and sitting outside, but a state medical consultant indicated she could participate in chores such as vacuuming, dusting, and washing dishes.[3] AR at 14.

There are three problems with the ALJ's finding in this regard. First, the question posed at the hearing to which plaintiff responded was, "How do you spend a typical day?" AR at 39. Plaintiff responded her typical day included taking medication, going outside, and taking care of her dog. *Id*. Plaintiff was not asked to list all of her daily activities. As such, plaintiff's response does not constitute a contradiction of other statements about her daily activities that she may have given to the state examiner.

Second and relatedly, elsewhere in her testimony plaintiff also did not address her ability to perform chores like vacuuming or dusting. She indicated her primary concerns were with bathroom and food related activities, as her disease is highly contagious. AR 33-34. Plaintiff never indicated her ability to perform chores beyond her aversion to wetting her hands. Plaintiff never offered a statement to the contrary that she could not vacuum or dust. Thus, plaintiff's testimony was not contradictory in this regard.

Finally, both of the state consultants' opinions used by the ALJ to discredit

---

[3] The court also notes plaintiff's objection that, while the consultant's findings appear to be based in part on a conversation with plaintiff, it is unclear whether this conversation actually took place. Pl. Mem. at 15; *see* AR at 242. The agency activity log only indicates a message left on plaintiff's answering machine on this date, not a conversation. AR at 140.

plaintiff on the basis of her daily activities were taken before the medical evidence of her herpetic whitlow in 2012.  *See* AR at 242-43, 252-53.  Both consultants reviewed the records from 2008 until 2011.  *Id*.  As plaintiff's evidence of herpetic whitlow came in 2012, the consultants' opinions would naturally not include the limitations imposed by this condition.  Accordingly, the ALJ erred on relying on them to show plaintiff's current daily activities are beyond what she indicated.

### 3.     **Application for Work**

The ALJ noted that plaintiff applied for work, suggesting she believed her abilities allowed her some capacity for work.  AR at 14.  In particular, at the hearing plaintiff testified she had applied for work, but gave no details and the ALJ did not further question her about this.  AR at 26-27.

Seeking employment after the alleged onset of disability date may be a factor in an ALJ's credibility determination.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  But in both *Bray* and *Macri*, there was some indication of the exertional levels required by the positions or how work would affect the plaintiffs' alleged disabilities.  Here, there is no indication the type of work plaintiff applied for, how it would affect her alleged impairments, or whether it would constitute substantial gainful activity.  Without more, this is of little value to the ALJ's credibility determination.  *See Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978) ("A willingness to try to engage in rehabilitative activity. . . is clearly not probative of a present ability to engage in such activity.") As such, it is not a clear and convincing reason to discount plaintiff's credibility.

### 4.     **Insufficiency of the Medical Evidence**

The ALJ contends plaintiff's alleged symptoms are more severe than would be expected in light of the objective medical evidence.  Specifically, the ALJ asserts the record of plaintiff's herpetic whitlow is extremely sparse, and contained only one report of a rash in 2011.  AR at 14.  This is not accurate.  On April 20,

2012, plaintiff was assessed by a High Desert Community Care physician as having herpetic whitlow. AR at 258. The records also indicate that plaintiff began some treatment for this condition. AR at 259-61. Nothing in the record contradicts this assessment and treatment.

In any event, lack of objective medical evidence cannot be the sole basis for discounting plaintiff's credibility. Although lack of objective medical evidence may be one factor used to evaluate credibility, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ provided no other clear and convincing reasons for discounting plaintiff's credibility. As such, even if the medical record may fairly be read as not supporting the severity of the symptoms plaintiff claimed to have suffered, that was not by itself a clear and convincing reason to discount plaintiff's credibility.

### B. The Errors Are Not Harmless As the ALJ Did Not Proceed Beyond Step Two

At step two, the ALJ found plaintiff's herpetic whitlow to be a medically determinable impairment, but found it was not a severe impairment that significantly limited plaintiff's ability to work. AR at 12. The ALJ found plaintiff's herpetic whitlow was not a severe impairment because he found the symptoms were not as severe as plaintiff claimed. AR at 13-14. Thus, the ALJ's credibility determination was critical to his step two determination. As the ALJ consequently did not proceed beyond the *de minimis* threshold of step two, his errors in discounting plaintiff's credibility cannot be considered harmless.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920 (a)(4)(ii). "[T]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. The purpose is to identify "at an early stage those claimants whose medical

impairments are so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

An impairment is "not severe" when the impairment would have no more than a minimal effect on a claimant's ability to work.[4] *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'"); SSR 85-28. "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687. In addition, "'if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

Here, plaintiff produced sufficient evidence – including objective medical records regarding her herpetic whitlow, and subjective testimony discredited in error – to suggest her claims are not "groundless" under the *de minimis* standard of step two. While the ALJ correctly notes the medical records are "incomplete," they are sufficient to pass the *de minimis* standard. *See Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture [two clinical visits years apart]. . . it includes evidence of problems sufficient to pass the *de minimis*

---

[4] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (as amended) (internal citations omitted).

9

threshold of step two."). Plaintiff's objective evidence is therefore sufficient to pass this low threshold.

Furthermore, if the ALJ considered the medical evidence incomplete, he had a duty to supplement the record before rejecting plaintiff's credibility at step two. Although a claimant bears the burden at step two, "the ALJ [has] an affirmative duty to supplement [a claimant's] medical record, to the extent that it was incomplete, before rejecting [a claimant's] petition at so early a stage in the analysis." *Id.* Here, plaintiff's record was sufficiently incomplete or ambiguous to warrant supplementation or clarification. *See Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry.") (internal quotation and citation omitted).

Because there was not substantial evidence to show that plaintiff's claim was groundless, the ALJ should have supplemented or clarified the record, and continued the five-step sequential analysis beyond step two to determine whether plaintiff was disabled. *See Webb*, 433 F.3d at 688. Accordingly, the ALJ erred in ignoring objective medical evidence of record, and finding plaintiff less than credible at step two.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record

that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred at step two in plaintiff's credibility determination. On remand, the ALJ shall again consider plaintiff's testimony and either credit it or provide clear and convincing reasons supported by substantial evidence for rejecting it. In addition, the ALJ shall supplement the medical record to the extent necessary. The ALJ shall then proceed through steps two, three, four, and five as necessary to determine whether plaintiff is under a disability as defined in the Social Security Act.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: June 23, 2014

SHERI PYM
United States Magistrate Judge